I'll call the next case that would be Kamienski v. Ford numbers 19-3339 and 19-3406 and I'll ask Appellant's Counsel if there will be a reservation of time for rebuttal. Yes, Your Honor, two minutes. Okay, that'll be granted. Your Honor, before I begin the substance, could I also just note that we had moved the court to take judicial notice of three items in the public record and that motion was referred to the Merits Panel and with the court's permission, I would like to refer to two of those three items today. They are the State Court Retrial Testimony of Jean Yerkeson and the We are aware of that motion. I don't have any objection. I'll ask my colleagues if they have any objection to reference to that. Judge Hardiman doesn't appear to have a... Judge Mady, do you have any objection to reference to that motion and material? No, I have no objection. Terrific. Great. All right. You can feel free to refer to that. So you may... Now, I should say I'm going to be timing you. I would suggest you time yourselves. Mr. McGinnis, I see you have 14 minutes total. You've taken out two minutes. And Mr. Joswiak, and I'm sorry if I'm mispronouncing your name, you have one minute. So I will be timing and I suggest you do the same. So Mr. McGinnis, you may proceed. Thank you, Your Honor. There's an overarching theme that I would like to emphasize, which is that Paul Kaminsky is an innocent man. He's innocent, not just in the sense there was insufficient evidence of his guilt, which this court determined in 2009, but also innocent in fact, as was determined by unanimous jury in a parallel state case in 2019. Notwithstanding his innocence, Mr. Kaminsky was wrongly incarcerated by the state of New Jersey for approximately 20 years. The point that I wish to respectfully submit to the court is that the harm to Kaminsky didn't happen by accident, but it was the result of sustained misconduct by various people within the Ocean County Prosecutor's Office. The only question is whether Mr. Kaminsky will be able to seek redress against some of those responsible for his unlawful conviction and lawful imprisonment by pursuing Section 1983 claims against two investigators and three attorneys from the Ocean County Prosecutor's Office, or whether the court's dismissal of these claims on summary judgment will be sustained. I respectfully submit the answer to that question turns largely and not exclusively on this court's determination, whether the respective defendants in points one through four are entitled to absolute immunity. Unless the court wishes otherwise, I thought I would go through each of the points in the order they appear in the brief. That's fine. All right. Point one concerns undisclosed threats and promises that investigator Mahoney made to state witness Gene Yerkeson during the investigative phase. Yerkeson testified three times under oath in the related state case that this is what happened. Not only did Mahoney do this, but he also tried to cover it up by filing a letter with the had been made. I need to note that there's a typo on page 38 of our opening brief. That letter is A675 in the appendix and not A657. There's no doubt that if believed by a jury, Yerkeson's testimony would support a Section 1983 claim against Mahoney, and there's no bona fide absolute immunity defense to warrant summary judgment in his favor, as Mahoney claimed for first time on appeal, but did not assert below. The district court didn't take cognizance of that, right? Because it's a timeliness issue, right? That's exactly right. That's why I don't really think this point is the focus should be on the absolute immunity, which clearly does not apply, but on whether the court made an abuse of discretion in excluding the Yerkeson materials. All right. And as I've read your brief, the argument was made that the Yerkeson testimony was unavailable to Kaminsky because Yerkeson was not talking, and until she testified in the other case, you didn't know what she was going to say, right? That's right. In fact, we had every reason to assume that she was still, in a sense, friendly to the state and would testify consistent with her trial testimony. All right. But we knew that there were a few witnesses in the criminal trial. This wasn't one of these cases with 30 witnesses, right? There were four or five key witnesses in the trial, correct? Well, there actually were like 30 witnesses. It was a trial that went on for almost a month. I mean, I'm talking about the important witnesses. Yerkeson was clearly an important witness, wasn't she? Yerkeson was an important witness, and that's why we attempted to speak to her. All right. And when she didn't speak, then you subpoena her, but that never happened. Right. Why should the district court be blamed for Kaminsky's counsel not issuing a valid subpoena? I guess the answer is, well, we didn't subpoena her. Obviously, you knew you had the power to subpoena her, but I suppose based on what you just said, you didn't subpoena her because you assumed that she was going to give unfavorable testimony. Right. And we had no reason to know otherwise. She was subpoenaed in the state case, but that was because the state wanted to use her to introduce that declarant testimony. So it was really in that context that we subpoenaed her. And at that time, we learned that she had a change of heart in terms of whether she was going to speak candidly or not. So that's the history of that. Our standard of review is abuse of discretion on whether the district judge allowed the motion to supplement, right? Correct. And I think if you apply the various factors for that standard, it's clear that the court did abuse its discretion. I would note, among other things, that the defendants never objected to the request to supplement the record with her testimony at the time that we made the request. Counsel has done that on this appeal, but that wasn't the district court. There's no prejudice to the defendants. There's no need for additional discovery. And I also pointed out how discovery was actually still open through May of 2019. And her testimony at the first hearing was in May of 2019. That's extremely relevant and is consistent with the overall theory of liability in this case. You're looking at the actual testimony. Is there really an explanation of what parts of her testimony, the previous testimony, were false? Yes. The main thing is that she said that Comiskey had gotten large quantities of drugs for free from Marzino, who was the shooter. And the hearsay testimony they wanted to put in was that Marzino, whose deceased, supposedly said to Yerkeson something about Comiskey getting a share of the drugs, which the state then inferred meant that he was part of the partnership in terms of stealing the drugs. So that's her testimony that she gave that was harmful to Comiskey. And that's the testimony that she recanted at the state court proceedings. Well, aren't we worried about Mahoney and the testimony that relates to him? Yes. And Mahoney also testified at the state court proceeding, and he denied making those promises and so on. And the state, and Mr. McGuire was the attorney at the state trial, they cross-examined Yerkeson three times, the three times she testified. And Mahoney had a chance to put in his story too, which I believe the jury disbelieved. Well, what I'm really talking about is Mahoney's alleged inducement of her testimony. Right. In the post-trial testimony, did she say that was false? Did she refute what I guess the state of the record was that no, she was not induced or otherwise coerced into her testimony? No, she said that she was coerced. She said that she was threatened with criminal prosecution, and she also was promised help in a pending child custody dispute that she had. Okay. Moving on then to the second point, which involves the state witness buddy Lehman. It turns out Lehman was an undisclosed confidential informant for the prosecutor's office, and that that office failed to produce key reports and investigative notes of interviews with him. And here, this is somewhat analogous to the Yerkeson materials. The court committed three reversible errors with respect to Lehman. The first and probably the most important for the court to focus on is whether the circumstantial evidence Kaminsky induced, establishing that he was enrolled as a confidential informant and was officially known within the prosecutor's office as CI 8513, whether that evidence was too speculative to allow the court to consider it for the summary judgment. And I think if the court looks at our submission, you'll see that, in fact, the evidence is overwhelming that Lehman was in fact CI 8513. Yeah, that seemed to be very strong for you, looking at all of those debriefing memos of the CI. But that's not enough for you to prevail on that, right? You've still got to get over the immunity hurdle. Right. Well, and obviously, Churchill and Mahoney were, they were investigators, not lawyers. But isn't it a functional test that if they're, it, the test isn't what their status is, or what their title is, the test is, is what function they were serving at the time, right? And why, why weren't Churchill and Mahoney at all relevant times acting as part and parcel of the prosecution? Right. It is a functional test, as the court said, but it's also a question of applying the test during the various phases of the investigation of the prosecution. So this thing with Lehman was pre-indictment, it was during the investigative, began during the investigative phase. So I don't even think you get to an absolute immunity issue. Well, hold on a minute. Clearly, the debriefing, to the extent Churchill and Mahoney were involved with Lehman as a CI, you're quite right, it predated, but isn't the real issue here their failure to disclose, during this prosecution of your client, their failure to disclose, or even perhaps worse, their perjurious testimony about whether, in fact, Lehman was a CI? Yes, it's largely that, but there's one other very significant thing that happened, which is that a interview with Lehman and tape recorded it and made it look like Lehman was only talking to him because it was under threat of indictment. And so this was clearly, again, an investigative step that was being taken by Mahoney to create evidence, which ultimately was used at the trial to create the false impression that Lehman was not an informant when he was. I don't recall that interview. Is that the one where they sort of pretextually got Kaminsky to admit that he had some Valium or some drugs on the boat, which was then got them, that's how they got the search warrant to search the boat when they had Kaminsky on their radar screen? No, that, but what the court just described is another thing that happened during the investigative process when, I see my time is done, believe it or not. So there are two different things. There was a, Mahoney brought Lehman into the police station and, you know, in a sense, read on his rights and the riot act and told him that, you know, he would be indicted and so on. And then they actually tape recorded that so that it would look like and allow Lehman to say, I've never cooperated with the police. I don't like police and so on. When in fact he had been signed up as a cooperator for at least two years before that, including during that two year period, creating the PC that allowed the search of Kaminsky's boat. I know that I've run out of time. I haven't dealt at all with the point on the deliberate deceptions on four courts and also the deliberate failure to supervise by County Prosecutor Lynch Ford and First Assistant to Ligney. I think that those are largely legal points. My point with respect to Mozzarella is that under a proper reading of Yaris, the court should not grant absolute immunity to an appellate attorney who had no personal involvement with the criminal proceedings. I say appellate attorney, both the direct appeal as well as the PCR litigation in the civil court afterwards. And I think if the court considers the common law underpinning for prosecutorial immunity, they would come to the same conclusion. I do need to take one minute and I'm willing to give up a minute of my rebuttal to address something that my adversary raised on Friday afternoon before Labor Day that's important. We'll shift. We'll shift a minute that way then. Okay. He claims there's an assertion in the opening brief concerning defendant mozzarella's representations about Kaminsky threatening Duckworth and saying that that's not completely accurate. First of all, the state did not raise this issue in its opposition briefing. Consequently, I didn't respond to it in our reply. It's a consecrated issue that requires a comparison of the appellate division decision, the state's briefs, multiple portions of the criminal trial transcript and Mozzarella's deposition testimony in the case. On Sunday, I responded to the email with my position and citations to the sources I just listed. And Mr. McGuire was not happy with that response. I regard this as a distraction that in no way detracts from the substance of the appeal, including the claim against Mozzarella. If the court wants more detail on this issue, I'm happy to file a supplemental brief. But absent such briefing, I think it would be on pages 10, 60, and 61 of our opening brief. Okay. All right. Thank you, Mr. McGuinness. We'll hear from co-appellant counsel. Good morning, your honors. May it please the court, Stephen Joswiak on behalf of Julia Palmer as executrix of the estate of Anthony Alonji. I would join in Mr. McGuinness's arguments regarding Gene Yerkeson and Buddy Lehman. They, as Judge Persky, the trial judge in the criminal case, noted that both Kaminsky and Alonji had a similar posture, and there was really no distinction between the two of them. And as a matter of fact, the testimony of Yerkeson could have been more damaging to Alonji than Kaminsky, tying the circumstantial evidence that the state needed in order to tie Alonji to the shooter Marzano. Without that testimony and his ability to impeach the witness, it was critical and really devastating to him. So I will join in his arguments. And at this stage, I feel that the qualified immunity is something that should be left to the jury and not as a matter of law to be decided by the district court. And especially, your honors, I cited in my summary judgment arguments below and here, if the court were to read the State v. Marshall case in New Jersey Supreme Court, what went on in the Ocean County Prosecutor's who was involved with the homicide investigations, very questionable activities going on in the 1980s that make the credibility of what went on in this underlying criminal trial, really something that, in my feeling and opinion, should be left to the jury and not decided as a matter of law. Okay, counsel. Thank you. Thank you. Judge Hardiman or Judge Mady, do you have questions for either appellant's counsel at this moment? Okay. All right. Then we'll hear from the government's attorney. Thank you. May it please the court, Robert McGuire from the Office of the New Jersey Attorney General for the appellees. And I think it's important in starting off to focus on what this case is about. It is a civil suit claiming violation under 1983. It is not an attempt to reverse a criminal conviction. And that's a problem for the plaintiffs here because while they make all sorts of arguments that might support a request to overturn a criminal conviction, they clearly involve things where our courts have said, as a matter of well established precedent, that there's an absolute immunity. And that has to deal with issues concerning what discovery is provided in connection with the judicial proceeding or trying to use perjured testimony as part of a judicial proceeding. And therefore, their claims fail. It is clear with respect to what they say the investigators are supposedly responsible for, it has to deal with whether they disclosed information during the discovery process in connection with a judicial proceeding and whether they violated that. They characterize it as violations of the duties under Brady and Giglio. The problem is the law is clear that a violation of Brady or Giglio can set aside a criminal conviction, but it is not something that provides for civil liability. In fact, it is subject to absolute immunity. And I believe that it was Judge Hardiman before who correctly said, what you need to do is do a functional analysis of what the claims are. The claims here with respect to the investigator defense, Churchill and Mahoney, is that they knew information about Lehman that they did not disclose in the run up to the criminal trial. Things that are intimately associated with the judicial phase are subject to absolute immunity, whoever they're done by. In this case, using a functional analysis, any violation of Brady or Giglio is a prosecutorial action that is subject to complete absolute immunity. That's clear. If you wanted to back up and take a look at this from the standpoint of, okay, let's consider that they weren't acting for the investigators to make the prosecutor's office available with information, that claim also fails because in Gibson, this court recognized that the duty for officers, if you're just going to consider them as law enforcement officers, to disclose exculpatory information had not been established even as of 2000 within the Third Circuit, let alone back in the 1980s or 1988 when this trial took place. So if the theme is that you should consider them as investigators, then look at what the judge found below. And he says qualified immunity applies because the law had not established that they were required to turn that information over by established precedent at least as of 2000, according to this very court. What about Mr. McInnis's argument that that they were acting as investigators when they brought Lehman in under false pretenses and pretended that he was a hostile witness when he was in fact already signed up as a CI? Well, two things. The allegation in this lawsuit is not that he was brought in under false and that resulted in an unfair trial. That is the factual allegation here. It's a problem, Your Honors, because throughout this case, plaintiffs have constantly reframed issues and presented things to different courts at different times differently. I mean, they've done more reframing than Bob Vila in the entire run of this whole house. But the fact of the matter is that they said that the fact that Buddy Lehman was an informant should have been disclosed to the court. That was the theme of the case. That is their claim. That claim fails. So it all comes back to a Brady-Giulio violation and that's prosecutorial. Correct. What about Marzarella? There's not a lot of case law that I could find about whether appellate advocates for the state are entitled to absolute immunity the same way that we know prosecutors who are in the trenches are. Thank you, Judge Harden. Actually, there's quite a bit of case law. We cited four circuits within our brief. As a matter of fact, the first circuit in the Reid case from 1995, the second circuit in the Parkinson case in 2001, the fourth circuit in the Carter case in 1994, the seventh circuit in the Houston case in 1992, the ninth circuit in the Demery case in 1984, and the 11th circuit in the Allen case that we cited. But there's no law that we have. There's no Supreme Court law and third circuit law, right? With respect to whether the prosecutor, the appellate counsel has to have been trial counsel? In that factual scenario, that is not correct. But I would posit this. You just want us to join the chorus. You want us to join the other circuits that have said, look, it doesn't really matter if you're the trial lawyer or the appellate advocate. You get prosecutorial immunity either way. Right. And your honors, let me, let me focus this more because think of the practical real world implication here. What plaintiff is suggesting is that the only way to defend the criminal prosecution, the only way that you can keep a conviction on appeal is if the same guy that tried the case stays on throughout the appeal. So what does that mean as a practical matter? Prosecutor's officer said, it means we go back to the good old days where people actually did their cases from start to finish and they didn't bring in experts for every bit and piece of the case, right? I mean, that is one thing, but as you, as I know, a couple of you have been U.S. attorneys and know that there are delineations between some people concentrating on trials. Some people concentrate on appeals. Here's the problem with the position that appellate counsel was not protected. Think about this case, your honors. In 2009, there were habeas proceedings. Under plaintiff's theory that appellate counsel is not protected, anybody who defended the prosecution in any appeals or on the habeas who had not been involved in the 1988 trial would do so at peril of civil liability. How does that square with the duty of the state to vigorously prosecute convictions and keep them on the record? Because a conviction would become worthless as your honors know, turnover at prosecutor's offices, particularly at the trial level, is very high. And the suggestion that once somebody moves on, guess what? That conviction that prosecutor Smith got in that case, well, it's going to come out the window because the minute that somebody appeals it, nobody in this office is going to take up the appeal. No one's going to defend that because they become subject to civil liability. It is a preposterous position. Mr. Marzarella was an advocate for the state in a judicial proceeding. The immunity clearly applies. With respect to Marzarella and what he did here, it's clear in the Colwicky versus Dawson case, this court has found that the activity of making legal argument within a judicial proceeding is a subject of absolute immunity. It's been set for 20-something years within, sorry, yes, 26 years, I believe, that making legal argument in the context of judicial proceeding is a subject of absolute immunity. It is telling that plaintiff's counsel could not find one case that involved core prosecutorial functions where somebody had said that it shocked the conscience that the prosecutor had done something. And that makes sense because if you look at the context of other things that have absolute immunity, if a prosecutor himself perjured himself, that doesn't shock the conscience. If the prosecutor extorted, got somebody to give a false statement, that is immune. If the prosecutor then presented that person at the grand jury and at the trial, that does not shock the conscience. They're saying that the briefing in the habeas case, which by the way, resulted in a verdict for the plaintiff. So we're, aside from everything else, where is the deprivation of a right by having made arguments that didn't even succeed? With respect to Jean Yerkeson's testimony, again, let's be clear. What the allegation is, is that Officer Mahoney got her to testify in a perjurious fashion at the trial. That is the allegation. Via inducements and coercion. That, and again, I wonder, Your Honors, take a look at what the supposed inducement and coercion was. She was already under criminal indictment. So she was not threatened with being charged criminally. But put that aside. She had a custody case too, right? Yes, Your Honors. She does have a custody case. But the issue again is, what would the prosecutor do to go in and throw off her custody case? But it doesn't even matter. Because the allegation, talking to witnesses about testimony can result in, can be related to only two proceedings. Grand jury, in which case it's absolutely, absolutely immune. Or a trial, at which it is absolutely immune. And again, I want the court to be aware before plaintiff tries to move the goalposts. Because throughout this case, the goalposts have not just been moving, but they've been on, they've been on a motorized cart. The allegation as to Yerkeson, and the he got her to give false testimony at the trial. And it was repeated over and over again. In point two of the brief in this court, it says the evidence that defendant Mahoney threatened, coerced, and induced state witness Jean Yerkeson to give gratuitous testimony against Kaminsky, and then affirmably denied it. On page 38, plaintiff says that Yerkeson says that she gave false or inaccurate testimony against Kaminsky after Mahoney effectively threatened her or promised she would not be prosecuted. On that same page, plaintiffs tell this court, Mahoney therefore is not entitled to qualified immunity for inducing Yerkeson to give perjured testimony, and then falsely denied it. The plaintiff says that Yerkeson's testimony at trial, that's the allegation. That allegation fails as a matter of law. And there's just briefly, if I could also address this issue of Delany and Ford. Plaintiff says, supposedly this is some sort of just administrative task. No, it's not. The court can see for yourselves, the applications made to the plaintiff were specifically to get involved in this case, to stop this prosecution. Imler, going back to the basics, says that the decision whether to continue a prosecution is at the heart of prosecutorial immunity. So a request that Delany or Ford get involved to stop this prosecution is subject to prosecutorial immunity. It is beyond doubt. Putting aside that, also it's the same issue with respect to the alleged deprivation. They won. Plaintiff won on the appeal. So what right was deprived? And then even if- I mean, their argument is 20 years of liberty, right? But I mean, I guess he was convicted of the pretty substantial cocaine charge, so he was going to do some serious time anyway. But their complaint here isn't that they won the civil case. Their complaint is that a man was wrongly convicted and incarcerated, right? That's correct, Judge Hartman. But the issue here is, again, and this is focusing on Ford and Delany. What he's saying is that in the context of the 2009 proceedings, he sent communications at that time saying, you should discontinue the prosecution for these issues with the appeal briefs. So it is not- there's no tying 20 years before that to Ford and Delany. What he's saying is, I went to Ford and Delany and said, get involved in this case, and they didn't. But the fact of the matter is, that case was already briefed and already won for him. And with respect to, even if you consider that as, quote unquote, administrative, in Vandekamp, the court said, and the district court below very properly relied on Vandekamp, saying, even if you say something involves personnel and could be considered administrative in the broad sense, when it comes down to things that require legal analysis, and particularly in the context of a given case, even those administrative, quote unquote, administrative actions are subject to absolute immunity. And in the Schneider case within this district, the court has recognized that quote unquote, administrative actions that deal with a particular prosecution are subject to the absolute immunity under Vandekamp. And therefore, the claims against Ford and Delany fail for that reason. So unless the court has any other questions, I- I do. The motion to supplement, could you describe what is the prejudice of allowing counsel to supplement the record? Well, your honor, it has to do with the fact that this was tried for- was in process for any number of years. And the fact of the matter is, as I think I've made plain here, the claims, even if you were to let them into the case, would be subject to dismissal. And the fact of the matter is, if your honors actually look at the testimony of Gene Yerkeson and the court's determination whether to consider testimony, I guess, 32 years later, the fact of the matter is she testified a number of times in a contradictory fashion when she was asked as part of the state proceedings, did you tell the truth in your 19- 1988 testimony? She said, yes, I did. And Mr. McGinnis asked her a question, did all these promises and things that Mahoney offered to you change how you testified? And she said, no, I testified honestly. It didn't hurt that he said those things, but no. And then again, if you look at the actual testimony in the trial, as to Ms. Yerkeson, she was asked, did anybody ask you to lie? And she said, no. Again, I encourage the court to look at the actual testimony. The best thing that plaintiff's counsel has is that she said she may have shaded her testimony. Okay. All right. Thank you, counsel. Judge Hardiman, Judge Mady, anything more? No. Okay. All right. Thank you, counsel. Mr. McGinnis, you're down to a minute. So we'll hear from you. Yes. First of all, I don't mind being compared to Bob Vila because at the end of the day, the ugly old house looks pretty good. And I think that's what happened with this case. If Mr. McGuire said that Gene Yerkeson had been indicted, that's not factually correct. And if he said that absolute immunity applies during the grand jury stage, I would say that's also incorrect as a matter of law, that's the investigative stage. His reliance on Gibson is misplaced because in this case, the investigators, you can presume, deceit the prosecutor. There's no reason to believe that they told Prosecutor Millard about the undisclosed deals with Yerkeson or the thing with Lehman. I just can't imagine Millard would have allowed that perjurous testimony. One of the important points, when you look at the lawyers that were involved here, you look at the common law reason for absolute prosecutorial immunity, and that's to encourage aggressive prosecution. I think we all would agree on that, and that it's a good thing. For an appellate attorney, and in particular, where the issue is sufficiency of evidence, there is no aggressiveness involved. The issue isn't whether you can be more aggressive or less aggressive in scouring the record. The only issue is whether you can be more thorough or less thorough. For those reasons, the rationale that supports absolute prosecutorial immunity would not apply to Mazzarella, and also would not apply to Lynch, Ford, and DeLigny when they were supervising him in his capacity as an appellate attorney. Do you have any cases that support that argument? No. The main thing that I'm doing is I'm looking at the reasoning, the stated reasoning, in the Yaris case, where it like three times says that the attorney has to be personally involved in the criminal prosecution. Obviously, Mazzarella was not personally involved in the criminal prosecution, and neither were Lynch, Ford, or DeLigny. Okay. All right. Well, thank you, counsel. We want to thank counsel for their excellent argument today, and their under advisement, and hope that you had a good experience here on Zoom with us. And again, we'll take the case under advisement.